UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL EDWARD OTTINGER, JR. (1),<br><br>    Defendant. | Case No.: 10-cr-05016-H-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)**<br><br>[Doc. No. 1739.] |

On September 22, 2022, Defendant Michael Edward Ottinger, Jr., proceeding pro se, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 1739.) On October 5, 2022, the Court referred Defendant's § 3582(c)(1)(A) motion to Federal Defenders for review and the filing of a status report pursuant to General Order No. 692-B. (Doc. No. 1743.) On October 27, 2022, Federal Defenders filed a status report stating that Federal Defenders of San Diego, Inc. "does not recommend appointment of counsel at this time." (Doc. No. 1745 at 2.) On January 20, 2023, the Government filed a response in opposition to Defendant's motion for compassionate release. (Doc. No. 1754.) On March 2, 2023, Defendant filed a reply in support of his motion. (Doc. No. 1761.) On April 17, 2023, the Court denied Defendant's motion for appointment of counsel. (Doc.

1

No. 1762.) For the reasons set forth below, the Court denies Defendant's motion for compassionate release.

## Background

On October 6, 2011, the Government filed a second superseding indictment charging Defendant, among others, with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. No. 46.) On June 4, 2012, Defendant, pursuant to a plea agreement, pled guilty before the Magistrate Judge to the single count of conspiracy to distribute methamphetamine charged in the second superseding indictment. (Doc. Nos. 641, 647, 652.) On June 7, 2012, the Magistrate Judge issued her findings and recommendation, finding that Defendant's plea of guilty was made knowingly and voluntarily; Defendant was competent to enter a plea; and there was a factual basis for Defendant's plea, and recommending that this Court accept Defendant's guilty plea. (Doc. No. 643). On June 21, 2012, this Court adopted the findings and recommendation of the Magistrate Judge and accepted the Defendant's guilty plea to count 1 of the second superseding indictment. (Doc. No. 701.)

On December 3, 2012, the Court sentenced Defendant to a custodial term of 262 months (21 years and 10 months) followed by five years of supervised release. (Doc. Nos. 998, 1018.) The Court entered a judgment on December 5, 2012. (Doc. No. 1018.)

On November 18, 2013, Defendant filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel. (Doc. No. 1254.) On July 7, 2014, the Court denied Defendant's § 2255 motion, and the Court denied Defendant a certificate of appealability. (Doc. No. 1450.) Defendant appealed the Court's July 7, 2014 order to the United States Court of Appeals for the Ninth Circuit. (Doc. No. 1455.) On March 13, 2015, the Ninth Circuit denied Defendant's request for a certificate of appealability. (Doc. No. 1535.)

On December 15, 2020, the Court granted Defendant's motion to compel U.S. Probation to amend his presentence report ("PSR"). (Doc. No. 1681.) By the present

motion, Defendant moves pursuant to 18 U.S.C. § 3582(c)(1)(A) to reduce his sentence of imprisonment. (Doc. No. 1739.)

## Discussion

### I. Legal Standards

"'"A federal court generally "may not modify a term of imprisonment once it has been imposed."'" United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021) (quoting Dillon v. United States, 560 U.S. 817, 819 (2010); 18 U.S.C. § 3582(c)); accord United States v. Tadio, 663 F.3d 1042, 1046 (9th Cir. 2011); see also United States v. Barragan-Mendoza, 174 F.3d 1024, 1028 (9th Cir. 1999) ("[D]istrict courts do not have 'inherent authority' to reconsider sentencing orders."). "But this general rule is subject to several exceptions." United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021). One of those exceptions is the compassionate release provision in 18 U.S.C. § 3582(c)(1)(A). See Aruda, 993 F.3d at 799; United States v. Wright, 46 F.4th 938, 944 (9th Cir. 2022).

Section 3582(c)(1)(A) provides:

> (c) **Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); accord Aruda, 993 F.3d at 799–800.

When as here a defendant moves for compassionate release under § 3582(c)(1)(A)(i), a district court "may reduce his term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) 'extraordinary and compelling reasons' warrant a sentence reduction; (3) a sentence reduction is 'consistent with applicable policy statements' issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)." United States v. Chen, 48 F.4th 1092, 1094–95 (9th Cir. 2022); see Wright, 46 F.4th at 945. "Although a district court must conclude that a defendant satisfies all [these] predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." Wright, 46 F.4th at 945 (citing Keller, 2 F.4th at 1284).

The Ninth Circuit has explained that because "compassionate release derogates from the principle of finality, it is a 'narrow' remedy." Id. at 944 (citing Freeman v. United States, 564 U.S. 522, 526 (2011)). Further, a district court's "disposition of a compassionate release motion 'is discretionary, not mandatory.'" Id. at 945 (quoting United States v. Jones, 980 F.3d 1098, 1106 (6th Cir. 2020)). In addition, "[a]s the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction." United States v. Grummer, 519 F. Supp. 3d 760, 762 (S.D. Cal. 2021) (citing United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016)); see, e.g., Wright, 46 F.4th at 951 ("it was [defendant]'s burden to establish his eligibility for compassionate release").

II. **Analysis**

A. Exhaustion

A court may not modify a term of imprisonment under Section 3582(c)(1)(A), "unless the defendant has fully complied with the exhaustion requirement" set forth in that provision. Keller, 2 F.4th at 1282 ("§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when

properly invoked."). Under that exhaustion requirement, "a court may not consider a motion brought under § 3582(c)(1)(A) unless (1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has 'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf,' or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." Id. at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)).

In its opposition brief, the Government concedes that Defendant has satisfied the statutory exhaustion requirement because he filed the present motion for compassionate release "after his request to the warden was denied in August 2021." (Doc. No. 1754 at 7 n.3.) As such, the Court concludes that Defendant has complied with the exhaustion requirement in Section 3582(c)(1)(A).

B.   Extraordinary and Compelling Reasons

Congress provided no statutory definition of "extraordinary and compelling reasons" in Section 3582(c)(1)(A). Aruda, 993 F.3d at 800. "Instead, Congress stated that the Sentencing Commission, 'in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" Id. (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" can be found at U.S.S.G. § 1B1.13. Id. "The commentary to § 1B1.13 lists four circumstances that qualify as 'extraordinary and compelling reasons': (A) the medical condition of the defendant; (B) the age of the defendant; (C) family circumstances involving the defendant's minor child or spouse or registered partner; and (D) 'Other reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).'"

United States v. Mendez, No. 18-CR-3980-03-WQH, 2022 WL 7128195, at *2 (S.D. Cal. Oct. 12, 2022) (quoting U.S.S.G. § 1B1.13 cmt. n.1.); see Aruda, 993 F.3d at 800–01. However, the Ninth Circuit has explained that because "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant," "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." Aruda at 802; accord Wright, 46 F.4th at 946; see also United States v. Wooten, No. 21-50126, 2021 WL 6116632, at *1 (9th Cir. Dec. 27, 2021) ("U.S.S.G. § 1B1.13 'remains helpful guidance even when motions are filed by defendants'" (quoting United States v. McCoy, 981 F.3d 271, 282 n.7 (4th Cir. 2020))).

As such, district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Aruda, 993 F.3d at 801 (citing McCoy, 981 F.3d 271, 284). "[T]he determination of what constitutes extraordinary and compelling reasons for sentence reduction lies squarely within the district court's discretion." Chen, 48 F.4th at 1095.

In support of his motion for compassionate release, Defendant argues that two "extraordinary and compelling reasons" are present here. (Doc. No. 1739-1 at 1-2; Doc. No. 1761 at 1.) First, Defendant contends that the sentence he received containing a "career offender" enhancement is grossly disproportionate to the sentence he would have received had been sentenced today following the passage of the First Step Act. (Id.) Second, Defendant argues that his age and pre-existing medical conditions place him at an increased risk of serious illness or death should he contract COVID-19. (Id. at 2.) The Court addresses each of these reasons in turn below.

Defendant argues that "extraordinary and compelling reasons" exist because there is a dramatic sentencing disparity between the sentence he received in this case and the sentence he would have received under the current law. Specifically, Defendant contends that one of the offenses used as a predicate to support his "career offender" enhancement is no longer a qualifying offense following the passage of the First Step Act. (Doc. No.

1739-1 at 1-2, 3-9, 29-40; Doc. No. 1761 at 2.)  In response, the Government argues that Defendant's argument fails because the applicable guideline range for Defendant has not changed even after the passage of the First Step Act.  (Doc. No. 1754 at 5, 14-15.)  The Court agrees with the Government.

"On December 21, 2018, Congress passed the First Step Act of 2018." United States v. Ogata, No. CR 12-00190 HG-01, 2020 WL 5579546, at *1 (D. Haw. Sept. 17, 2020).  With respect to offenses under 21 U.S.C. § 841(b)(1)(A), "the First Step Act did two things: (1) prospectively reduced the mandatory minimum to 15 years and (2) amended the requirement for a predicate offense to trigger the mandatory minimum—now requiring a 'serious drug felony' instead of a 'felony drug offense.'" United States v. Lizarraras-Chacon, 14 F.4th 961, 965 (9th Cir. 2021) (quoting 21 U.S.C. § 841(b)(1)(A)).  The Ninth Circuit has held that "a district court may consider the First Step Act's non-retroactive changes to sentencing law, in combination with other factors particular to the individual defendant, when determining whether extraordinary and compelling reasons exist for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." Chen, 48 F.4th at 1093.

At the sentencing hearing in this case, the Court calculated Defendant's guideline range by starting with a base offense level of 32; adjusting the offense level up to 37 based on a "career offender" enhancement under U.S.S.G. § 4B1.1(b)(1); and subtracting three points for acceptance of responsibility under U.S.S.G. § 3E1.1(b), resulting in a total offense level of 34 and an advisory guideline range of 262 to 327 months.  (Doc. No. 1266 at 21-22.)  The Court then sentenced Defendant to 262 months in custody, the low end of the guideline range.  (Id. at 22.)

Even if the Court had sentenced Defendant following the passage of the First Step Act in 2018, the above calculations and the resulting sentence would have remained the exact same because the First Step Act would have had no effect on Defendant's status as a "career offender" and the resulting adjusted offense level of 37 that he received in the above calculations.  U.S.S.G. § 4B1.1 sets forth the "career offender" enhancement and provides:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). At sentencing, the Court relied on Defendant's 1999 conviction for possession for sale of a controlled substance in violation of California Health and Safety Code § 11378 and Defendant's 2002 conviction for offer to manufacture a controlled substance in violation of California Health and Safety Code § 11379(b) as the two underlying predicate "controlled substance offense[s]" for Defendant's "career offender" enhancement. (See Doc. No. 1266 at 22-23; Doc. No. 906, PSR ¶¶ 56, 59; see also Doc. No. 1450 at 6-7.)

Defendant argues that following the passage of the First Step Act in 2018, his 2002 conviction for offering to manufacture methamphetamine is no longer a qualifying predicate offense for a "career offender" enhancement under § 4B1.1(b)(1). (Doc. No. 1739-1 at 4.) Defendant is wrong. Application Note 1 to § 4B1.1 states that the term "controlled substance offense" is "defined in § 4B1.2." U.S.S.G. § 4B1.1 app. n.1. U.S.S.G. § 4B1.2 in turn defines the term "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Application note 1 to § 4B1.2 further explains that the terms "'[c]rime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 app. n.1. In light of this language in the application note, the Ninth Circuit has held in many cases that the definition of "controlled substance offense" in § 4B1.2 includes "offers" to engage in the prohibited conduct. United States v. House, 31 F.4th 745, 753–54 (9th Cir. 2022) (holding that prior

conviction for violation of "Montana's accountability statute[, which] include offers to engage in prohibited conduct" is a qualifying "controlled substance offense" under § 4B1.2); United States v. Crum, 934 F.3d 963, 967 (9th Cir. 2019) (holding that prior conviction for "offering to sell a controlled substance" is a qualifying "controlled substance offense" under § 4B1.2); United States v. Lee, 704 F.3d 785, 790 n.2 (9th Cir. 2012) (same); United States v. Sorenson, 818 F. App'x 668, 669 (9th Cir. 2020) (same); see also United States v. Shumate, 329 F.3d 1026, 1031-32 (9th Cir. 2003) (holding that "solicitation is within the Guidelines' definition of a controlled substance offense for purposes of § 4B1.1"). As such, Defendant's 2002 conviction for offering to manufacture methamphetamine qualifies as a "controlled substance offense" under § 4B1.2. See id. (See Doc. No. 1450 at 7 n.6.)

Although the First Step Act changed the term "felony drug offense" in 21 U.S.C. § 841(b)(1)(A) to the term "serious drug felony," the First Step Act contained no changes to the definition of "controlled substance offense" set forth in U.S.S.G. § 4B1.2. See United States v. Lopez, No. 19-CR-0261-L, 2019 WL 3974124, at *6 (S.D. Cal. Aug. 21, 2019) ("'The changes made by the First Step Act were statutory and did not make any changes to the current text of the guidelines.'"); United States v. Spencer, 519 F. Supp. 3d 237, 243 (E.D. Pa. 2021) ("[T]he statutory changes made by the First Step Act did not make any changes to the Guidelines Manual . . . ."); see also Lizarraras-Chacon, 14 F.4th at 965. As such, Defendant's 2002 conviction for offering to manufacture methamphetamine remains a qualifying "controlled substance offense" under § 4B1.2, meaning that Defendant would have still qualified for a "career offender" enhancement under § 4B1.1(b)(1) even after passage of the First Step Act.

Further, Defendant's adjusted offense level would have still been 37 in light of that "career offender" enhancement. Although the First Step Act altered the mandatory minimums set forth in 21 U.S.C. § 841(b)(1)(A), it did not alter the statutory maximum of "life imprisonment" set forth in that provision. See Lizarraras-Chacon, 14 F.4th at 965. This matters because § 4B1.1(b) sets the "career offender" offense levels based on the

statutory maximum of the offense, not the minimum. See U.S.S.G. § 4B1.1(b). Under § 4B1.1(b)(1), the "career offender" offense level for an offense with a statutory maximum of "Life" is 37. Id. § 4B1.1(b)(1). As such, because Defendant pled guilty to an offense for which the statutory maximum is "life imprisonment," his adjusted offense level with the "career offender" enhancement would have been 37 regardless of the First Step Act. (See Doc. No. 906, PSR at 1; see also Doc. No. 647 at 4-5 (Defendant acknowledging in his plea agreement that he understands that the crime he is pleading guilty to carries "a maximum term of life in prison").)

In sum, even if the Court had sentenced Defendant after the passage of the First Step Act in 2018, he still would have qualified for a "career offender" enhancement under § 4B1.1(b)(1) resulting in an adjusted offense level of 37, and the Court would have made the exact same sentencing calculations that it did in determining his sentence. Accordingly, Defendant has failed to demonstrate that passage of the First Step Act represents an "extraordinary and compelling reason" to reduce his sentence.[1] See, e.g., United States v.

---

[1] In his reply brief, Defendant for the first time argues that his guideline range would have been lower had he been sentenced after the passage of Amendment 782. (Doc. No. 1761 at 2.) Because Defendant raised this issue for the first time in a reply brief, it is waived. See Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008) ("arguments raised for the first time in a reply brief are generally considered waived"). Further, this argument fails on the merits because Defendant's guideline range was based on his status as a "career offender," meaning that his guideline range would have been "unaffected by Amendment 782's reduction to base offense levels for drug charges." United States v. Corum, No. 1:12-CR-00001-TMB, 2015 WL 13882609, at *1 (D. Alaska July 11, 2015) ("Corum's guideline range was driven by his status as a career offender, not his drug charge, and is therefore unaffected by Amendment 782's reduction to base offense levels for drug charges."); see, e.g., United States v. Romero, 675 F. App'x 777 (9th Cir. 2017); United States v. Harris, No. CR 2:08-554-01 WBS, 2018 WL 1453249, at *1 (E.D. Cal. Mar. 23, 2018); see also United States v. Charles, 749 F.3d 767, 770 (9th Cir. 2014) ("[R]etroactive amendments regarding sentences under the drug guidelines do not affect individuals who were sentenced as career offenders because, as we said '[t]he two sentencing schemes are mutually exclusive.'").

Gonzalez, No. 8:07-CR-00202-DOC-5, 2022 WL 4119401, at *2 (C.D. Cal. July 11, 2022) (finding that defendant had failed to demonstrate extraordinary and compelling circumstances because passage of the First Step Act would not have altered the defendant's guideline range and the resulting sentence).

Defendant also argues that "extraordinary and compelling reasons" exist due to his age (53 years old), his pre-existing medical conditions, and the threat posed by the COVID-19 pandemic. (Doc. No. 1739-1 at 2, 9-19, 26-29; Doc. No. 1761 at 1-2, 3-5, 9-11, 13.) Defendant asserts that he suffers from type 2 diabetes, hypothyroidism, obesity, hyperlipidemia (high cholesterol), and hypertension (high blood pressure). (Doc. No. 1739-1 at 12; see Doc. No. 1757, Ex. A at p. 10.) Defendant contends that these pre-existing conditions coupled with his age subject him to a risk of serious illness or death if he were to contract COVID-19. (Doc. No. 1739-1 at 12.)

In response, the Government has provided the Court with Defendant's medical records. The records show that Defendant has received consistent treatment for his medical conditions. (See Doc. No. 1757, Ex. A.) Further, the records show that Defendant has received both doses of the Pfizer COVID-19 vaccine along with the Moderna booster. (Id. at p. 4.) The records also show that although Defendant contracted COVID-19 in February 2021, he has since recovered. (Id. at p. 5.) In light of these facts, the Court declines to find that Defendant's pre-existing medical conditions coupled with the COVID-19 pandemic are an extraordinary and compelling reason to reduce his sentence. See United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."); United States v. Duran, No. 21-4104, 2022 WL 4391880, at *2 (10th Cir. Sept. 23, 2022) ("[V]accination will generally prevent a showing of an extraordinary and compelling reason for release

related to the pandemic."); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); United States v. Cobarruvias-Pete, No. 18CR4151-CAB, 2021 WL 4819301, at *1 (S.D. Cal. Oct. 15, 2021) ("Courts are consistently refusing to grant release from custody to inmates or detainees who have been vaccinated."); see also, e.g., United States v. Villarreal, No. 8-CR-1332-JAH-1, 2022 WL 874965, at *3 (S.D. Cal. Mar. 24, 2022) (declining to find that the defendant's pre-existing medical conditions coupled with the COVID-19 pandemic constitute an extraordinary and compelling reason when the defendant was fully vaccinated); United States v. Rupak, No. 16-CR-01333-BAS-1, 2022 WL 65171, at *3–4 (S.D. Cal. Jan. 6, 2022) (same); United States v. Del Rosario Martinez, 524 F. Supp. 3d 1062, 1066–67 (S.D. Cal. 2021) (same); Grummer, 519 F. Supp. 3d at 763 (same).

  C. Section 3553(a) Factors

  In considering a motion for compassionate release, a district court "must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted 'under the particular circumstances of the case.'" Wright, 46 F.4th at 945. The § 3553(a) factors "include, among other things: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants." Id. at n.4 (citing 18 U.S.C. § 3553(a)).

  Defendant was the Sergeant-at-Arms of the Hell's Angels Motorcycle Club and had a supervisory role in a methamphetamine distribution ring in San Diego as part of his association with that club. (Doc. No. 906, PSR ¶¶ 5, 13-20, 30; see also Doc. No. 1266 at

3.) Defendant has multiple prior felony convictions, including multiple convictions related to drug trafficking. (See Doc. No. 906, PSR ¶¶ 42-59.) Indeed, Defendant was determined to be a "career offender" under § 4B1.1(b)(1) due to his lengthy criminal history. (See Doc. No. 1266 at 22; Doc. No. 906, PSR ¶ 32.) Defendant's history of drug trafficking demonstrates that he poses a danger to the public. See United States v. Enriquez, No. 3:17-CR-03293-BEN-1, 2021 WL 3772379, at *8 (S.D. Cal. Aug. 24, 2021) ("'[a] drug trafficker is, by legal definition, a danger to the community'" (quoting United States v. Ailemen, 165 F.R.D. 571, 596 (N.D. Cal. 1996))); United States v. Rodriguez, No. 17CR1596-CAB, 2023 WL 1934326, at *3 (S.D. Cal. Feb. 10, 2023) ("As courts have consistently recognized, the proliferation of dangerous addictive narcotics is a significant public and societal harm."); United States v. Lopez-Ontiveros, No. 15-CR-575-GPC-1, 2020 WL 5909530, at *4 (S.D. Cal. Oct. 6, 2020) (Defendant "endangered the public by placing over 45 kilograms of methamphetamine into the community.").

In addition, Defendant was known to use violence or threats of violence to help control methamphetamine distribution activity for the Hell's Angels. (Doc. No. 906, PSR ¶¶ 16, 20, 27; see also Doc. No. 1266 at 8-9.) Further, despite his attempts to demonstrate rehabilitation while in custody, a review of Defendant's BOP record show that, during his time in custody, Defendant has been disciplined on multiple occasions, including for multiple incidents of assaulting another inmate. (See Doc. No. 1758, Ex. B.) Defendant's history of violent conduct also demonstrates the danger to public safety that Defendant would pose if released.

In light of the seriousness of the offense, the Defendant's criminal history, the need to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct, the Court sentenced Defendant to a custodial term of 262 months. Balancing these factors along with the factors raised by Defendant, (see Doc. No. 1739-1 at 20-26; Doc. No. 1761 at 5-9), the Court concludes that a sentencing reduction is not warranted here, particularly in light of the underlying criminal conduct and the Defendant's lengthy criminal history.

### Conclusion

In sum, the Court concludes that there are no "extraordinary and compelling reasons" that would warrant a sentencing reduction in this case. In addition, after considering and weighing the § 3553(a) factors, the requested sentencing reduction is not warranted under the particular circumstances of the case. Accordingly, after considering Defendant's briefing and applying the relevant legal standards, and based on the current record, the Court denies Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

The Court orders the Clerk of Court to mail a copy of this order to Defendant at his listed address of record: Michael Edward Ottinger, Jr., 11193220, USP McCreary, United States Penitentiary, P.O. Box 3000, Pine Knot, KY 42635.

**IT IS SO ORDERED.**

DATED: April 17, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT